UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MADELINE RUSCIN and RANDY J. RUSCIN, her husband,**

    Plaintiffs,

v.                                                                          Case No: 8:13-cv-101-T-35TGW

**WAL-MART STORES, INC., GARLAND SALES, INC. and PETER PECK,**

    Defendants.
_____

### ORDER

**THIS CAUSE** comes before the Court for consideration of the Motion For Remand and For Attorneys' Fees (Dkt. 11) filed by Plaintiffs, Madeline Ruscin and Randy J. Ruscin; the Response in opposition thereto (Dkt. 12) filed by Defendants, Wal-mart Stores, Inc., Garland Sales, Inc., and Peter Peck; and the Reply (Dkt.16) filed by Plaintiffs. Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **DENIES** Plaintiffs' Motion to Remand.

    I.  **BACKGROUND**

Plaintiffs allege that they purchased a rug from Defendant Wal-Mart Stores, Inc. ("Wal-Mart") that was manufactured and/or distributed by Defendant Garland Sales, Inc. ("Garland"). (Dkt. 2)  After the purchase, Plaintiffs placed the rug on a floor inside their home. (Id.)  On March 7, 2011, Madeline Ruscin stepped on the rug and a malfunction of the rug caused her to slip and fall. (Id.)  The slip and fall resulted in Madeline Ruscin severely fracturing her patella and having an exposed bone. (Id.)  Due to her injuries,

an ambulance transported her to the emergency room for evaluation and stabilization. (Id.) Thereafter, she was admitted to the South Bay Hospital where she underwent an open reduction and internal fixation of the fractured patella. (Id.) On December 5, 2011, she underwent an additional surgery. (Id.)

On December 6, 2012, Plaintiffs filed suit in state court against Defendants Wal-Mart, Garland, and Peter Peck ("Peck"), one of Wal-Mart's store-managers, for the manufacture and sale of the allegedly defective rug. (Dkt. 2) In the Complaint, Madeline Ruscin specifically asserts strict liability and negligence claims against Wal-Mart and Garland and a negligence claim against Peck. Although not labeled as a separate count in the Complaint, Randy J. Ruscin asserts a loss of consortium claim against each Defendant. See (Dkt. 2 at ¶25, 32, 41, 48, 60) For their injuries, Plaintiffs seek compensatory damages in excess of $15,000. (Dkt. 2 at P. 14)

On January 10, 2013, Defendants removed this case to this Court, alleging diversity jurisdiction. (Dkt. 1) Defendants asserted that the amount in controversy exceeds $75,000 and that complete diversity exists between Plaintiffs (Florida residents), Defendant Wal-Mart (a foreign corporation), and Defendant Garland (a Georgia corporation). (Id.) Defendants contend that Plaintiffs fraudulently joined Peck, a Florida resident, to defeat diversity jurisdiction. (Id.) In response to the removal, Plaintiffs filed the instant Motion to Remand. (Dkt. 11)

II. **LEGAL STANDARD**

Any civil case filed in state court may be removed by the defendant, if the case could have been brought originally in federal court. 28 U.S.C. § 1441(a). A removing defendant bears the burden of proving the existence of federal subject matter

jurisdiction.  See Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001). Removal statutes are to be construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.  Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir.1994).  When a removing defendant alleges diversity under 28 U.S.C. § 1332 as a basis for federal jurisdiction, it bears the burden of demonstrating that there is (1) complete diversity of citizenship and (2) the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  After removal, a party may move to remand the case to state court on the basis of any defect in the removal, including lack of subject matter jurisdiction.  28 U.S.C. § 1447(c).

### III. DISCUSSION

In the instant case, the issue of remand turns on whether subject matter jurisdiction exists.  Plaintiffs contend that Defendants have failed to establish that the amount in controversy exceeds $75,000.  (Dkt. 11)  Plaintiffs also contend that complete diversity does not exist because Peck is a non-diverse defendant.  Defendants rebut Plaintiffs' contentions, arguing that they have shown by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold of $75,000. Defendants also argue that complete diversity exists because Plaintiffs fraudulently joined Peck; consequently, Peck should not factor into the determination of whether diversity of citizenship exists.

On review of the proffered evidence, the Court finds that Defendants have met the showing necessary to establish the amount in controversy and diversity of citizenship requirements.

### 1. Amount in Controversy Requirement

Plaintiffs argue that Defendants have failed to show that the amount in controversy exceeded $75,000 at the time of removal. Plaintiffs contend that Defendants relied on conclusory allegations to establish the jurisdictional amount. In response to Plaintiffs' assertions, Defendants argue three points. First, Defendants argue that it is facially apparent from the Complaint that the amount in controversy exceeds the jurisdictional threshold. Second, Defendants argue that in cases similar to the instant case, the settlements and jury verdicts have exceeded $75,000. Third, Defendants argue that Plaintiffs' settlement demand of $500,000 and Madeline Ruscin's medical expenses, which are in excess of $109,000, establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum.

As in this case, where a plaintiff has made an unspecified demand for damages in the complaint, a removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. See Williams 269 F.3d at 1319. When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. Id. If the jurisdictional requirement is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed. See Id.; see also Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 753 (11th Cir. 2010) (recognizing that a court will permit "the use of deduction, inference, or other extrapolation of the amount in controversy," when the amount in controversy is not apparent from the face of the complaint). In considering

the removal notice and evidence, the court is permitted to make reasonable deductions and inferences. See Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061-62 (11th Cir. 2010).

### i. Facially Apparent From the Complaint

In this case, the amount in controversy is not facially apparent from the Complaint. Although the Complaint alleges, inter alia, that Madeline Ruscin suffered a patella fracture and experienced residual physical and financial effects from the injury, the only dollar value mentioned in the Complaint is the circuit court's minimum jurisdictional allegation of an amount "in excess of Fifteen Thousand ($15,000.00) Dollars." (Dkt. 2) Madeline Ruscin's injuries may well warrant a significant award should liability be established; however, the Complaint does not provide the Court with sufficient information to ascertain the value of either her claims or Randy J. Ruscin's loss of consortium claim. See A.W. ex rel. Willis v. Wal-Mart Stores East, LP, No. 6:12-cv-1166-Orl-36DAB, 2012 WL 5416530, at * 5 (finding that although the complaint alleges that the minor plaintiff suffered bodily injury, "the Court is specifically prohibited from engaging in the speculation Defendant appears to invite."). In order for the Court to affix a proper estimate to the value of Plaintiffs' claims, the Court would have to speculate about the cost of Madeline Ruscin's two surgeries, guess about her present and future rehabilitative expenses, theorize about her lost wages, and speculate about Randy J. Ruscin's loss of consortium claim. Simply stated, the Court would have to engage in impermissible speculation to determine the value of the claims. See Lowery, 483 F.3d 1184, 1214 (11th Cir. 2007) ("[T]he existence of jurisdiction should not be divined by looking to the stars."). As such, the amount in controversy is not facially

apparent from the face of the Complaint.

### ii. Medical Expenses

Because the jurisdictional amount is not facially apparent from the Complaint, the Court turns to the removal notice and evidence relevant at the time the case was removed. Defendants proffer Madeline Ruscin's medical insurance payment log as evidentiary support that the amount in controversy exceeds the jurisdictional minimum. (Dkt. 12-3) The medical insurance payment log itemizes Madeline Ruscin's medical bills, which were $109,667.51. Plaintiffs contend that $109,667.51 is a misleading number because Madeline Ruscin's insurance carrier paid only $41,307.29 for her medical expenses. According to Plaintiffs, if Defendants are found liable, Madeline Ruscin is only entitled to recover $41,307.29 in damages for her medical bills because $68,000[1] of her medical bills were written off by her medical providers. Plaintiffs assert that Defendants would be entitled to set-off $68,000 against $109,667.51.

"[A]ny set-off to which Defendant may be entitled is irrelevant at the jurisdictional stage, as the Court must look at the amount in controversy at the time of removal. Black v. State Farm Mut. Auto. Ins. Co., 10-80996-CIV, 2010 WL 4340281, at *2 (S.D. Fla. October 22, 2010); Gehl v. Direct Transp., Ltd., 6:12-CV-1869-ORL, 2013 WL 424300, at *2 (M.D. Fla. February 4, 2013)("[C]ase law instructs that any post-judgment 'set-offs' or collateral source payments are irrelevant to determine the amount in controversy at the jurisdictional stage.") Because a plaintiff cannot defeat subject matter jurisdiction by reducing her claim after removal has taken place, it "therefore logically follows that subject matter jurisdiction is not defeated simply because the

---

[1] $68,000 is the difference between the amount billed ($109,667.51) and the amount actually paid ($41,307.29).

6

parties might anticipate a future reduction in recoverable damages." Henry v. K–Mart Corp., No. 8:10–cv–2105–T–33MAP, 2010 WL 5113558, at *4 (M.D. Fla. Dec. 9, 2010); see also Stramiello v. Petsmart, Inc., No. 8:10–cv–659–T–33TGW, 2010 WL 2136550, at *3–4 (M.D. Fla. May 26, 2010)(finding set-off for insurance reimbursement of medical expenses after a slip and fall accident did not defeat amount in controversy for removal). Consequently, any set-off to which Defendants may be entitled is irrelevant at the jurisdictional stage, as the Court must look at the amount in controversy at the time of removal. DeGeorge v. Geico Gen. Ins. Co., 6:12-CV-1654-ORL-37, 2012 WL 6212916, at *2 (M.D. Fla. December 13, 2012)("Setoffs are not properly considered when determining the amount in controversy.").

Against this maxim, the Court finds that Madeline Ruscin's medical bills establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. Although there may be an anticipatory set-off of $68,000, such set-off would only arise after a judgment has been rendered in Plaintiffs' favor. At this jurisdictional stage, Defendants proffer of Madeline Ruscin's medical expenses that exceed $109,000 satisfies Defendants' burden of establishing the amount in controversy requirement. Consequently, the Court need not consider the settlement demand letter or the purportedly similar slip-and-fall cases cited by Defendants.

### 2. Diversity of Citizenship Requirement

#### i. Fraudulent Joinder

With the amount in controversy requirement satisfied, the only remaining jurisdictional issue is whether complete diversity exists. Plaintiffs argue that complete diversity is lacking in this case because Defendant Peck is not diverse. Defendants,

7

however, contend that Plaintiffs fraudulently joined Peck. Defendants argue that there is no reasonable basis in fact and law to support Madeline Ruscin's negligence claim against Peck. Defendants specifically argue that a store manager does not have a legal duty to inspect each and every item in a particular store, such that the failure to discharge such a duty would be actionable. This Court agrees.

In a removal case alleging fraudulent joinder, the removing party has the burden of proving either that (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. Pacheco de Perez v. AT & T Company, 139 F.3d 1368, 1380 (11th Cir.1998); Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir.1997). With respect to the first type of fraudulent joinder, "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)(internal citation and quotation omitted). "The plaintiff need not have winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." Id.

In determining "whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Crowe, 113 F.3d at 1538 (internal citation omitted). A federal court should make "these determinations based on the plaintiff's pleadings at the time of removal; but the court

may [also] consider affidavits and deposition transcripts submitted by the parties." Id. Notably, "[w]hile the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b) . . . the jurisdictional inquiry must not subsume substantive determination." Id. As such, a "district court's authority to look into the ultimate merits of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." Id. at 1542.

Whether plaintiff can sustain a claim against a non-diverse defendant is a pure question of Florida law. Under Florida law, a store manager, or other agent or employee of a corporation acting within the course and scope of their employment, may not be held individually liable in tort unless the complaining party first alleges and proves that the officer or agent owed a duty to the complaining party, and that the duty was breached through personal (as opposed to technical or vicarious) fault. See Orlovsky v. Solid Surf, Inc., 405 So. 2d 1363 (Fla. 4th DCA 1981). A corporate agent or employee may not "be held personally liable 'simply because of his general administrative responsibility or performance of some function of his employment'—he or she must be actively negligent." Id. (citations omitted).

In this case, Plaintiffs do not allege that Peck was actively negligent, that he was personally at fault for the incident, or that he owed an individual duty to Plaintiffs. Rather, Plaintiffs allege in a conclusory fashion that Wal-Mart delegated to Peck, as a store manager, the responsibility of protecting its store customers from the risk of injury due to dangerous and unreasonably defective products and merchandise sold at Wal-Mart. (Dkt. 2 at ¶51) According to Plaintiffs, Peck breached this duty by, inter alia, failing to properly inspect the rug to discover the alleged defect prior to its sale.

Even if the Court were to accept as true the allegation that such a duty was delegated to Peck in his capacity as store manager, no corresponding personal duty or liability would arise. As stated above, under Florida law, Peck cannot be held personally liable "simply because of his general administrative responsibility for performance of some function of his employment." See McElveen v. Peeler, 544 So.2d 270, 272 (Fla. 1st DCA 1989); see also Pritchard v. Wal–Mart Stores, Inc., No. 09–cv–46, 2009 WL 580425, at *2 (M.D. Fla. Mar. 5, 2009)(holding that a Wal-Mart store manager was not liable for negligence for contaminated peanut butter ); Tynes v. Target Corp., No.12-24302, 2013 WL 1192355, at *2 (S.D. Fla. March 22, 2013)(holding that there was little possibility that the plaintiff could prove a cause of action in negligence against the individual Target employee); Kimmons v. IMC Fertilizer, Inc., 844 F.Supp. 738, 739, 740 (M.D.Fla.1994)(concluding that non-diverse manager of a corporation was not liable to plaintiff where manager did not personally participate in events giving rise to plaintiff's accident and was not present at the accident site at the time of plaintiff's injury); Scipione v. Advance Stores Co, Inc., No. 8:12-cv-687-T-24-AEP, 2012 WL 3105199, at *4 ("absent evidence that [the store manager] personally participated in tortious conduct, he cannot be held personally liable for negligence under Florida law.").

In light of the above, the Court finds that there is *no possibility* that Madeline Ruscin can maintain her cause of action for negligence against the non-diverse Defendant Peck under the circumstances alleged in the Complaint. Thus, the Court concludes that the non-diverse Defendant Peck has been fraudulently joined and is due to be dismissed from this case. In his absence, complete diversity exists.

IV. **CONCLUSION**

In sum, Defendants have established that complete diversity exists in this case and that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Accordingly,

1. Plaintiffs' Motion For Remand and For Attorneys' Fees (Dkt. 11) is **DENIED**.

2. The **CLERK** is directed to terminate Plaintiffs' Supplement to Their Motion for Remand and For Attorneys' Fees (Dkt. 14).

3. Defendant Peter Peck's Motion to Dismiss (Dkt. 8) is **GRANTED**. Defendant Peter Peck is Dismissed and the CLERK is directed to terminate him from this case.

**DONE** and **ORDERED** in Tampa, Florida, this 16th day of July , 2013.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person